MITCHELL SILBERBERG & KNUPP LLP
ADAM LEVIN (SBN 156773), axl@msk.com
STEPHEN A. ROSSI (SBN 282205), sar@msk.com
GENEVIEVE L. JAVIDZAD (SBN 336138) glj@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants
Home Box Office, Inc. and
Cooler Waters Productions, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPHINE TEHRANI, individually and on behalf of all Aggrieved Employees of Defendants in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>HOME BOX OFFICE, INC., a foreign corporation; COOLER WATERS PRODUCTIONS, LLC, a foreign limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:23-cv-07839<br><br>**DEFENDANT HOME BOX OFFICE, INC. AND COOLER WATERS PRODUCTIONS, LLC'S NOTICE OF REMOVAL**<br><br>(Federal Question Jurisdiction 28 U.S.C. §§ 1331, 1441)<br><br>(Removed from LASC Case No. 23STCV09609)<br><br>[Declarations of Stephen Rossi and Evan Sherman; Certificate of Interested Parties and Corporate Disclosure Statement Pursuant to FRCP 7.1 and Local Rule 7.1-1; Notice of Related Case; and Civil Cover Sheet filed concurrently herewith] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JOSEPHINE TEHRANI AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on this date, based on the allegations of Plaintiff Josephine Tehrani's ("Plaintiff") Complaint, Defendants Home Box Office, Inc. ("HBO") and Cooler Waters Productions, LLC ("Cooler Waters") (collectively, "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California Western Division pursuant to 28 U.S.C. Sections 1331, 1441, and 1446.  Defendants' removal of this action is proper for the reasons set forth below:

**Federal Question Jurisdiction**

1. <u>Jurisdiction</u>:  This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331, as it is an action arising under federal law.  Specifically, as set forth in more detail below, this action is preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 141 *et seq*., because Plaintiff's claims arise from or require the interpretation of one or more collective bargaining agreements ("CBAs") governing the terms and conditions of Plaintiff's employment.  This action therefore may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. Section 1441(a) and (c).

2. On or about April 28, 2023, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of Los Angeles, entitled, *Josephine Tehrani, individually and on behalf of all Aggrieved Employees of Defendants in the State of California v. Home Box Office, Inc.; Cooler Waters Productions, LLC; and Does 1 through 50*, Case No. 23STCV09609, (the "PAGA Action").

3. Plaintiff's Complaint alleges it is a Representative Action For Civil Penalties Under The Private Attorneys General Act of 2004.

4. <u>Copies of all Process, Pleadings and Orders</u>:  Pursuant to 28 U.S.C. Section 1446(a), copies of all process, pleadings, order, and other papers or exhibits of every kind served upon and/or available to Defendant are attached to this Notice of Removal, as follows:

- **Exhibit 1**:  Complaint filed by Plaintiff Josephine Tehrani ("Plaintiff") in the case entitled, *Josephine Tehrani, individually, and on behalf of all Aggrieved Employees of Defendants in the State of California v. Home Box Office, Inc.; Cooler Waters Productions, LLC*; *and Does 1 through 50*, on April 28, 2023 in the Superior Court of the State of California, County of Los Angeles, Case No. 23STCV09609 ("State Court Action"). This document was personally served on Defendants on August 4, 2023.

- **Exhibit 2:**  Summons against HBO and Cooler Waters filed by Plaintiff in the State Court Action on April 28, 2023.

- **Exhibit 3:** Civil Cover Sheet filed by Plaintiff in the State Court Action on April 28, 2023.

- **Exhibit 4:** All other documents filed by Plaintiff in the State Court Action on April 28 2023, as follows: (a) Notice of Case Assignment – Unlimited Civil Case; (b) Voluntary Efficient Litigation Stipulations; (c) Alternative Dispute Resolution ("ADR") Information Packet; and (d) First Amended General Order.

- **Exhibit 5:** The State Court's Order Re: Notice of Case Management Conference and Certificate of Mailing dated April 28, 2023.

- **Exhibit 6:** Notice and Acknowledgment of Receipt signed by Defendant in the State Court Action on August 21, 2023.

- **Exhibit 7:** Notice and Acknowledgment of Receipt Proof of Service filed by Plaintiff in the State Court Action on August 7, 2023.

- **Exhibit 8:** Notice of Related Case filed by Plaintiff in the State Court Action on August 29, 2023.

- **Exhibit 9:** The Court's Minute Order on the Parties re Case Management Conference dated August 29, 2023.
- **Exhibit 10:** The Court's Minute Order on the Parties re Notice of Related Case dated August 30, 2023.
- **Exhibit 11:** Defendant's Notice of Appearance of Counsel for Defendants Home Box Office, Inc. and Cooler Waters Productions, LLC filed on August 21, 2023.
- **Exhibit 12:** The Initial Status Conference Order filed by the Court on August 30, 2023.
- **Exhibit 13:** Answer filed by Defendants on September 19, 2023, in the State Court Action.
- **Exhibit 14:** Amended Proof of Service re Answer filed by Defendants on September 19, 2023, in the State Court Action. At the time of this filing, the Court had not yet returned a file endorsed copy but Defendants' will submit it once it is returned.

*See* Declaration of Stephen A. Rossi ("Rossi Decl. ¶¶ 2-15, Exs. 1-14).

5. Defendants were served with the Summons and Complaint on August 4, 2023. Defendants are informed and believe, and thereon allege, that no "Doe" defendants have been served with a Summons or the Complaint. Rossi Decl. ¶ 16. Defendants join in and consent to this Notice of Removal. Accordingly, all named and served Defendants have consented to and joined in this Notice of Removal. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient [to satisfy requirement that all served defendants join removal.]"). Accordingly, this action may be removed by Defendant to federal court pursuant to 28 U.S.C. Section 1441.

### Removal is Timely

6.  This Notice of Removal is being filed within thirty (30) days after Defendant's acceptance of service of the Complaint (August 21, 2023) and, therefore, is timely pursuant to 28 U.S.C. Section 1446(b).  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347–48 (1999); *Harper v. Little Caesar Enterprises, Inc.*, 2018 WL 5984841, at *2 (C.D. Cal. Nov. 14, 2018).

### Preemption by the Labor Management Relations Act

7.  Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

8.  As applied, Section 301(a) wholly preempts any and all purported state law causes of action by an employee concerning a dispute over her terms and conditions of employment, if the causes of action are "based directly on rights created by a collective bargaining agreement" or require the "interpretation of a collective bargaining agreement." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir. 2000); *Firestone v. S. Cal. Gas Co.*, 281 F. 3d 801, 802 (9th Cir. 2002) ("a state law claim is preempted [by Section 301] if it necessarily requires the court to interpret an existing provision of a collective bargaining agreement ('CBA') that 'can reasonably be said to be relevant to the resolution of the dispute.'[Citation]"); *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988) (even if no federal question appears on the face of the complaint, removal is proper

because state action was really a claim for breach of the collective bargaining agreement and thus preempted by Section 301); *Sheeran v. Gen. Elec. Co.*, 593 F.2d 93, 96-97 (9th Cir. 1979) ("Appellants argue . . . that in their complaint they asserted no basis for § 301(a) jurisdiction that they are not claiming a violation of any collective bargaining agreement as a basis for their claims. . . . It is undisputed, however, that the rights and benefits sought by . . . union employees were the subject of collective bargaining . . . . We conclude that the action was properly removed.").

9. Pursuant to the "artful pleading" doctrine, a claim arises under and is governed by Section 301(a) if the nature of the claim depends upon or requires interpretation of a CBA, even if the plaintiff omits reference to the CBA in her lawsuit or purports to base her claims on state law. *Hyles*, 849 F.2d at 1216 (even if no federal question appears on the face of the complaint, removal is proper because "[t]o determine whether section 301 preempts a state tort claim, we do not look to how the complaint is cast. Rather, we inquire whether 'the claim can be resolved only by referring to the terms of the CBA.'"); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048 (9th Cir. 1987) ("Stallcop's complaint does not reveal that her employment is governed by a collective bargaining agreement, but this is not dispositive under the 'artful pleading' doctrine.  Under this doctrine, the court may investigate the true nature of the plaintiff's allegations; if the complaint actually raises a section 301 claim on the collective bargaining agreement, even though it is framed under state law, the claim is preempted."); *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1472 (9th Cir. 1984) ("employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. . . . In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The

case may then be removed to federal court and adjudicated under the appropriate federal law.").

10. The Ninth Circuit applies the two-step *Burnside* test (named for *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)) to determine whether LMRA preemption applies. First, the court "ask[s] whether the asserted cause of action involves a right that exists solely as a result of the CBA." *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1152-53 (9th Cir. 2019). If it does, preemption applies and there is federal jurisdiction over the claim. If not, the court proceeds to the second step and determines whether the claim requires interpreting the "scope, meaning, or application" of the collective bargaining agreement. If that is the case, preemption applies and there is federal jurisdiction over the claim.

## Collective Bargaining Agreements at Issue

11. Plaintiff was employed as a background actor on the television production, "Winning Time." Complaint ¶ 12. Although she alleges she was employed "non-union" on October 7, 2022 and November 7, 2022, her employment was actually covered by and subject to the terms of a collective bargaining agreement on multiple days, including on October 7, 2022.

12. The Screen Actors Guild – American Federation of Television and Radio Artists ("the Union" or "SAG-AFTRA") is a "labor organization" as defined by the LMRA. At all times relevant to the Complaint, the following collective bargaining agreements applied to production of Winning Time:

(1) "Producer – SAG-AFTRA Codified Basic Agreement of 2014" (the "2014 Basic Agreement");

(2) "2014 SAG-AFTRA Television Agreement" (the "2014 Television Agreement");

(3) "2017 Memorandum of Agreement Between the Screen Actors Guild-American Federation of Television and Radio Artists and the Alliance of Motion Picture and Television Producers (the "2017 MOA"); and

(4) "2020 Memorandum of Agreement Between the Screen Actors Guild-American Federation of Television and Radio Artists and the Alliance of Motion Picture and Television Producers (the "2020 MOA").

Declaration of Evan Sherman ("Sherman Decl." or "Sherman Declaration") ¶ 4.

13. True and correct copies of the 2014 Basic Agreement, the 2014 Television Agreement, the 2017 MOA, and the 2020 MOA (collectively, the "Agreements") are filed herewith, respectively, as Exhibits A-D to the Sherman Declaration. The Agreements are "contracts" between a "labor organization" and an "employer" as those terms are defined by the LMRA Section 301(a).

14. At all times relevant to the Complaint, the Union represented the first twenty-one (or, as of July 1, 2021, first twenty-two) background actors employed each day on Winning Time and was the exclusive bargaining representative for those actors, including Plaintiff when she worked on October 7, 2022 and on certain other days. *See* Sherman Decl. ¶¶ 5-6; Ex. A (2014 Basic Agreement) at Schedule X, Part I § 1.(a)("The Union is recognized by the Producers, and each of them, as the exclusive bargaining agent for all background actors described in subsections (c)(1) and (c)(2) below who are employed on theatrical and television motion pictures in the motion picture industry …"); *id.* § 1.(c)(1) ("The terms and conditions of this Schedule X, Part I shall apply: (1) For motion pictures, the principal photography of which commences between July 1, 2014 and June 30, 2015 … to the first twenty-one (21) background actors (excluding swimmers, skaters and dancers, but including stand-ins) employed each day on each television motion picture."); Ex. D (2020 MOA) at 7 (increasing the number of covered background actors to 22 as of July 1, 2021). Background performers may be covered by the Agreements even if they are not members of SAG-AFTRA at the time they work and may work for up to 30 days without offering to pay the union. 2014 Basic Agreement § 2.

15. On multiple dates, including October 7, 2022, Plaintiff was covered by and subject to the Agreements. Accordingly, she was paid rates under the Agreements. Indeed, she alleges she was paid $14 for "SMOKE" and $7.50 and $10 for meal penalties, which are rates contained in the Agreements. 2014 Basic Agreement at Schedule X Part I § 8 ("A background actor required to get wet or to work in snow or smoke shall receive additional compensation of $14.00 per day"); *id.* § 29 (e) (listing $7.50 and $10 meal penalties). She was also paid pursuant to a SAG-AFTRA "UNION BACKGROUND VOUCHER," attached hereto with her paystub as **Exhibit 15**. On information and belief, other "non-union" employees were paid similarly when they were covered by the Agreements.

16. Plaintiff's PAGA claims all depend on her (1) proving she suffered a violation of the California Labor Code and is thus an "aggrieved employee," and (2) proving that others also suffered a violation of the Labor Code. *See* California Labor Code Section 2699(c) and (a). Here, Plaintiff alleges violations of the Labor Code that are preempted because they arise from or require interpretation of the Agreements. Thus, although Plaintiff pleads her claims as state law claims, her Cause of Action are preempted by Section 301 of the LMRA.

**PAGA Penalties Sought for Alleged Meal and Rest Period Violations**

17. Plaintiff alleges that she was underpaid because her premium wages for meal and rest break violations, like her overtime rate, were based on her base hourly rate and did not factor in the non-discretionary payments discussed above. Complaint ¶¶ 25-28, 42, 46. Plaintiff's PAGA cause of action is preempted by Section 301 of the LMRA because Plaintiff's meal and rest period allegations arise under the Agreements and adjudication of this cause of action requires application and interpretation of the Agreements.

18. Specifically, the Agreements preempt the meal break requirements of California Labor Code Section 512 and Plaintiff's meal break claim is a disguised claim for breach of the Agreement. Under California Labor Code Section 512(d),

employees in the motion picture or broadcasting industries "covered by a valid collective bargaining agreement" are exempt from the meal break requirements under Labor Code Sections 512 and 226.7 and Industrial Welfare Commission Wage Order Numbers 11 and 12, if the collective bargaining agreement "provides for meal periods and includes a monetary remedy if the employee does not receive a meal period required by the agreement." Thus, if Section 512(d) applies, "the terms, conditions, and remedies of the agreement pertaining to meal periods apply in lieu of" state law meal break provisions. Labor Code Section 512(d).

19. Here, the Plaintiff worked in the motion picture or broadcasting industries and the Agreements at Schedule X Part I Section 29, "Meal Periods" which sets out when meal breaks are owed and the penalties for failing to provide the breaks as required by the Agreement. *See also id.* § 29 (e) ("Violation of Meal Period Provisions"). Accordingly, Plaintiff's claim for meal penalties (or to the extent it requires proving a violation of the California Labor Code based on such violation) is displaced by the Agreements and the claim is preempted. *Curtis*, 913 F.3d at 1146 (if state law is displaced by CBA, a claim under the state law exists solely as a result of the CBA and is preempted); *Marquez*, 804 F. App'x at 680 (meal break claim preempted when Labor Code Section 512 exemption applies); *Taylor*, 2020 WL 8268197, at *2 (holding federal jurisdiction was met when Section 512(d) applied); *Hall*, 146 F. Supp. 3d at 1202 (same).

20. Moreover, whether or not Sections 512(d) applies, the resolution of Plaintiff's PAGA cause of action, to the extent it seeks penalties meal and rest period violations, will require interpretation of the Agreements for the same reasons discussed in connection with her overtime claim.

### PAGA Penalties Sought for Alleged Failure to Pay Overtime

21. Plaintiff alleges that in addition to her hourly rate she received additional non-discretionary flat sum payments for "performing work that involved smoke," that such payments should have been "factored into the calculation of

Plaintiff's regular rate of pay for the payment of her overtime and double time wages," that it was not factored in, and that her overtime rate was too low under California Labor Code Section 510 as a result. Complaint ¶¶ 13-15, 42, 46.

22. Plaintiff's PAGA cause of action, to the extent it seeks penalties for unpaid overtime or requires proving a violation of the California Labor Code based on such violation, is preempted by Section 301 of the LMRA because that cause of action arises under the Agreements and adjudication of it requires application and interpretation of the Agreements.

23. First, under California Labor Code Section 514, Section 510's overtime requirements "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."[1] *See also* 8 Cal. Code Regs. § 11120(3)(J) (Wage Order 12 stating the same).

24. Under Ninth Circuit law, when Section 514 applies, any claim for overtime is preempted because the right to overtime "exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152. In *Curtis*, the plaintiff claimed his employer failed to pay him overtime for 12 off-duty hours under Labor Code Section 510. *See Curtis*, *supra* at 1146. Because Section 514 applied, Section 510's "default definition of overtime and overtime rates" "d[id] not apply" and the plaintiff's

---

[1] Under Section 514, the employer and employees can establish their own overtime scheme and are not required to follow the scheme established by law. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 111 (2014) ("When there is a valid collective bargaining agreement, [e]mployees and employers are free to bargain over not only the rate of overtime pay, but also when overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins within a particular day, but also the timing within a given week."); *see also Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 85 (2015) ("The MTA is only required to pay a premium for overtime worked as defined in the parties' CBA.").

11
**DEFENDANTS' NOTICE OF REMOVAL**

"right to overtime exist[ed] solely as a result of the CBA, and therefore [wa]s preempted under § 301." *Id.* at 1153-54; *see also Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679, 679-80 (9th Cir. 2020) (same and rejecting challenge to *Curtis*); *Loaiza v. Kinkisharyo Int'l, LLC*, at *4 (C.D. Cal. Oct. 6, 2020) (explaining *Curtis* clarified that application of Section 514 makes overtime claim arise under CBA and rejecting attempts to distinguish *Curtis*); *Buckner v. Universal Television, LLC*, 2017 WL 5956678, at *2 (C.D. Cal. Nov. 30, 2017) ("The provisions in the CBAs meet the exceptions articulated in section 514 and the Wage Orders, and state law does not govern Plaintiff's overtime rights. … Therefore, Plaintiff's overtime rights arise exclusively out of the CBAs, and the LMRA preempts Plaintiff's overtime claim.").

25. Section 514 applies here and preempts Plaintiff's PAGA claim to the extent that it seeks penalties for unpaid overtime or requires proving a violation of the California Labor Code based on such violation because her claim relies on days worked when she was employed under the Agreements and the Agreements meet Section 514's requirements:

26. First, the Agreements explicitly provide for the "wages, hours of work, and working conditions of the employees." *E.g.*, 2014 Basic Agreement at Schedule X § 3 ("Minimum Wages Scales and Hiring Procedure"), § 5 ("Weekly Rates"), § 6 ("Additional Compensation"), § 20 ("Guarantee of Employment for Daily Employees"); § 21 ("Workweek, Payroll Week, Regular Pay Day"); § 22 ("Overtime"); § 23 ('Sixteen Hour Rule") (" §7 ("Work of an Unusual or Hazardous Character"), § 8 ("Wet, Snow and Smoke Work; Exterior Work"); § 9 ("Body Make-Up; Skull Cap; Hair Goods; Hair Cuts); *see also, e.g.*, *id.* §§ 10-19 (addressing working conditions such as wardrobe, fittings, interviews, rehearsals, nudity, pets, props, and vehicle allowances).

27. Second, the wages provided all exceed California's minimum wage by more than 30%. *See*, *e.g.*, 2014 Basic Agreement at Schedule X § 3 (a)

(guaranteeing background actors $162 per 8 hour call in 2017 ($20.25 per hour)); 2017 MOA § 2.a (increasing rates 2.5% July 1, 2017, 3% July 1, 2018, 3% July 1, 2019); 2020 MOA § 2.a (increasing rates 2.5% July 1, 2020, 3% July 1, 2021, and 3% 2022). For instance, on October 7, 2022, background actors, the lowest paid position under the Agreements, were guaranteed at least $187 per 8 hour day -- or $23.375 per hour. The minimum wage at the time was $15.00 (Cal. Labor Code § 1182.12 (b)(1)(F). $23.375 is more than 55% greater than the minimum wage.

28. Finally, the Agreements provide premium pay for overtime. *E.g.*, 2014 Basic Agreement at Schedule X Part I § 22 ("Overtime").

29. Accordingly, the claim is preempted because it is a claim for breach of the Agreements. *Curtis*, 913 F.3d at 1153-54; *Marquez*, 804 F. App'x at 679-80; s*ee also Gray v. Marathon Petroleum Logistics Servs., LLC*, 2021 WL 129144, at *4 n.7 (C.D. Cal. Jan. 12, 2021) (holding overtime claim preempted under *Curtis* based on application of California Labor Code Section 514); *Taylor v. NBC W., LLC*, 2020 WL 8268197, at *2 (C.D. Cal. Jan. 2, 2020) (same); *Buckner*, 2017 WL 5956678, at *2; *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1202 (C.D. Cal. 2015) (where CBA displaced state law, claim under state law was preempted).

30. Second, to the extent Plaintiff disputes whether Section 514 applies, such a dispute would require interpreting the Agreements to determine whether Section 514's requirements are met. In that case, preemption applies because any claim necessitating the interpretation of a CBA is preempted. *See Firestone v. S. California Gas Co.,* 219 F.3d 1063, 1066 (9th Cir. 2000) (preemption applied where parties disputed whether CBA's complicated overtime calculation yielded a "premium rate" satisfying Section 514); *McKinley v. Sw. Airlines Co.*, 2015 WL 2431644, at *6 (C.D. Cal. May 19, 2015), *aff'd*, 680 F. App'x 522 (9th Cir. 2017) (preemption applied where CBA had to be interpreted to determine regular rate of pay, which did "not explicitly define" it).

13

DEFENDANTS' NOTICE OF REMOVAL

31. Third, preemption applies because the Agreement must be interpreted to decide Plaintiff's overtime claim. For instance, Plaintiff alleges she was employed "non-union" when Defendants claim she was covered by the Agreements on numerous days, which raises a question of the scope and application of the Agreement. Additionally, Plaintiff also claims she was paid more for work that "involved smoke," and such payments were "non-discretionary." However, a non-discretionary payment is one that is "owed 'pursuant to [a] prior contract, agreement, or promise,' not 'determined at the sole discretion of the employer.'" *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 863-64 (2021). That means Plaintiff must show that she (and other background performers covered by the Agreements) received additional smoke pay and that such payment was always *required* and not paid in the employer's discretion. But the term "smoke" in the Agreement is undefined (*see* 2014 Basic Agreement Part I at § 8), raising questions of interpretation about its breadth (e.g., is car exhaust "smoke", is manmade atmospheric vapor smoke "smoke," is fake cigarette smoke "smoke," etc.). *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1046 (9th Cir. 2016) ("Under longstanding labor law principles, the scope and meaning of a collective bargaining agreement is not limited to the text of the agreement. Instead, 'the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.'").

32. Thus, even if Plaintiff's claim does not satisfy the first step of the *Burnside* test (which it does), the dispute raised by Plaintiff's claim would still require more than merely referencing the Agreements and will require extensive analysis of the Agreements and potentially extrinsic evidence to determine the parties' intent. That analysis must be conducted by a federal court. *See Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1411 (9th Cir. 1992) (plaintiff's claim was preempted by Section 301 and was properly removed to

federal court because resolution of claim required interpretation of scope of rights under the collective bargaining agreement); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220–21 (1985) ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, … or dismissed as pre-empted by federal labor-contract law.").

33. Accordingly, Plaintiff's PAGA cause of action, to the extent it seeks penalties for unpaid overtime, is preempted by Section 301(a) of the LMRA.

### PAGA Penalties Sought for Alleged Failure to Pay All Wages Due and Owing on Separation of Employment

34. Plaintiff seeks waiting time penalties under California Labor Code Sections 201.5 and 203 because she was not paid all overtime and premium wages due at the time Plaintiff's employment was terminated. Complaint ¶¶ 42-46. However, as discussed above, Plaintiff's alleged entitlement to overtime and penalties arises from, and depends on interpretation of, the Agreements. Accordingly, Plaintiff's PAGA Cause of Action is preempted by Section 301(a) of the LMRA for the reasons noted above.

### PAGA Penalties Sought for Alleged Failure to Provide Accurate Wage Statements

35. Plaintiff seeks penalties under Labor Code Section 226(a) because "the wage statements issued by Defendants do not include the correct amount of gross and net wages earned, total hours worked by the employee, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Complaint ¶ 33-34, 42. Plaintiff again takes issue with the calculation of her wages, which is preempted because her wage claims arise from, and require interpretation of, the Agreements for the reasons noted above.

### Supplemental Jurisdiction

36. To the extent that anything alleged in the Complaint is not preempted by the LMRA and removable, any non-preempted cause of action falls within the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367. Any such non-preempted cause of action in the Complaint arises out of the same common nucleus of operative facts as the preempted causes of action and would normally be tried in one case. *See* 28 U.S.C. § 1367; *see also Bale v. General Tel. Co.*, 795 F.2d 775, 778 (9th Cir. 1986) (all claims that arose from the same alleged representations made at the time of hiring "fall within the scope of pendent jurisdiction"). Indeed, all of Plaintiff's causes of action arise solely from her experiences on the Winning Time and the terms and conditions she was subjected to. *See generally* Complaint.

37. Moreover, considerations of judicial economy, convenience and fairness to the litigants require that all of the causes of action alleged in the Complaint be tried in one forum. *See Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) ("Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is 'a common nucleus of operative fact between the state and federal claims….The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity.") (internal citations omitted).

38. Notably, even if supplemental jurisdiction did not exist, removal is still proper because any non-preempted cause of action may properly be removed to this Court pursuant to the provisions of 28 U.S.C. Section 1441(c), in that any such cause of action has been joined with claims which would have been removable if sued upon alone.

## Venue

39. Removal to this Court is proper under 28 U.S.C. Section 1441 because the Complaint was filed in the Superior Court of the State of California for the County of Los Angeles and this U.S. District Court for the Central District of California Western Division is the U.S. District Court for the district and division within which this action is pending.

40. A copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Los Angeles and served upon all adverse parties as required by 28 U.S.C. Section 1446(d), and an appropriate notice of compliance with 28 U.S.C. Section 1446(d) also shall be served and filed in the above-entitled Court.

WHEREFORE, Defendants respectfully request that this action be removed from the Superior Court of the State of California for the County of Los Angeles, to the above-entitled Court.

DATED: September 19, 2023          MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Stephen Rossi
Stephen Rossi
Attorneys for Defendants
HOME BOX OFFICE, INC. AND
COOLER WATERS PRODUCTIONS, LLC

//
//
//
//
//
//

1   Defendants Home Box Office, Inc. and Cooler Waters Productions, Inc.
2   hereby join in and consent to the removal of this action from the Superior Court of
3   the State of California to the United States District Court for the Central District of
4   California pursuant to 28 U.S.C. Section 1446(b)(2).

DATED:  September 19, 2023          MITCHELL SILBERBERG & KNUPP LLP

                                    By:   /s/ Stephen Rossi
                                          Attorneys for Defendants
                                          HOME BOX OFFICE, INC. AND
                                          COOLER WATERS PRODUCTIONS,
                                          LLC